CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

APR 22 2010

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTINE A. GOLDING, | ) |
| Plaintiff, | ) Civil Action No. 7:09-cv-00036 |
| v. | ) |
| MONTGOMERY COUNTY PUBLIC SCHOOLS, MARK PASIER, and MICHAEL STANLEY, | ) MEMORANDUM OPINION |
| Defendants. | ) |

This matter is presently before the Court on cross-motions for summary judgment filed by the Defendants and the Plaintiff. The Defendants filed a motion for summary judgment on January 29, 2010 (Dkt. No. 34). The Plaintiff, appearing *pro se*, filed a memorandum in support of plaintiff's motion for summary judgment (Dkt. No. 52) which this Court has construed as including a motion for summary judgment. The Defendants replied (Dkt. No. 54) as did the Plaintiff (Dkt. Nos. 55, 56). The Court heard oral argument via telephonic conference on April 7, 2010, making the matter ripe for consideration.

For the reasons set forth below, the Court finds that the Defendants' motion for summary judgment must be **GRANTED** and the Plaintiff's motion for summary judgment must be **DENIED**.

I. Factual and Procedural Background

Plaintiff Christine Golding ("Golding") filed a complaint against the Defendants Montgomery County Public Schools ("MCPS"), Mark Pasier ("Pasier"), and Michael Stanley on February 9, 2009. In her complaint she alleged that the Defendants violated her due process

1

rights when they removed her name from a list of substitute teacher's aides who were eligible to work within the MCPS system.

Golding worked as a substitute teacher's aide from January 2006 until February 2007 at a variety of schools within the MCPS system. During this time there were several reports of inappropriate or unprofessional conduct by Golding from a variety of sources and schools within the MCPS system. In a letter dated February 12, 2007, the Director of Human Resources for MCPS, Defendant Pasier, informed Golding of a list of concerns which they had received addressing her performance at various work assignments. These concerns were, as set forth in the letter, (1) "making and receiving phone calls on your cell phone during student instruction time," (2) "the inappropriate manner in which you addressed students," (3) "having conversations with students and adults during class time causing disruption to students' learning," and (4) "not providing needed services to special needs students." Pasier further notified Golding that as a result of several school administrators' dissatisfaction with her performance she would be removed from the pool of available substitute teacher's aides.

After Golding filed her complaint, the Defendants filed a motion to dismiss, which was denied by the Court on October 16, 2009. Thereafter, the Defendants filed a motion for summary judgment with several supporting affidavits. The Court heard oral argument on the motion for summary judgment, but declined to rule on the motion because Golding, appearing *pro se*, had never received a *Roseboro* notice. The Court scheduled another hearing on the Defendant's motion for summary judgment and arranged for a *Roseboro* notice to be sent to Golding. Golding then filed a memorandum in support of plaintiff's motion for summary judgment, which this Court construed as a motion for summary judgment, as well several briefs which this Court has construed as responses to the Defendants' motion for summary judgment. Although Defendants have submitted a total of five affidavits in support of their motion for

summary judgment, and despite having received a *Roseboro* notice, Golding has not submitted any affidavits.[1]

## II. Standards of Review

### A. Cross Motions of Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where there is no dispute as to a material issue of fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c) (2010). Specifically, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. PRO. 56(c) (2010); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). In making this determination, the court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Nguyen v. CNA Corp., 44 F.3d 234 (4th Cir. 1995). When faced with cross-motions for summary judgment, a court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). Therefore, when considering each separate motion for summary judgment, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. Nevertheless, "the party who bears the burden of proof on an issue at trial...cannot survive summary judgment without forecasting evidence sufficient to

---

[1] Golding has complained that some affidavits should be excluded, see Motion to Exclude Cheryl [sic] Fentress (Dkt. No. 61), but the affidavits are all properly before the Court. All of the specific timing provisions related to affidavits are no longer applicable in the 2010 version of the Federal Rules of Civil Procedure. See FED. R. CIV. PRO. 56(c), 2009 Amendments (2010) (The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in a new subdivision (c)(1)).

3

sustain his or her burden of proof on that point." McIntyre v. Aetna Life Ins. Co., 581 F. Supp. 2d 749, 756 (W.D. Va. 2008) (citing Celotex, 477 U.S. at 327).

### B. Deprivation of a Liberty Interest

Golding's complaint arises out of the removal of her name from a list of eligible substitute teacher's aides. Because she was not an employee with any associated administrative rights, it is uncontested that she had no property right in having her name on this list. Instead, she has alleged that she was deprived of a liberty interest to pursue future employment when MCPS and Pasier set forth the reasons she was being removed from the substitute teacher's aide list. The Fourth Circuit has held that a Fourteenth Amendment "liberty interest is implicated by public announcement of reasons for an employee's discharge." Johnson v. Morrison, 903 F.2d 996, 999 (4th Cir. 1990). Fourth Circuit jurisprudence has held that to demonstrate a violation of this liberty interest, a plaintiff must meet four requirements:

> A plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false.

Sciolino v. Newport News, Va., 480 F.3d 642, 646 (4th Cir. 2007). In the circumstances of this case, the only aspect of the Sciolino test at issue is whether the charges made in conjunction with Golding's termination were false.[2]

---

[2] Although the only issue disputed in the summary judgment briefs was the veracity of the charges against Golding, an interesting potential issue which was not addressed was the effect of the Defendants' offer to remove all objectionable documents from Golding's personnel file and replace them with a single memorandum stating only that Golding is "not eligible for service on the substitute list and not eligible for employment with [MCPS] in any capacity." Letter from Jim Guynn, September 10, 2009 (Dkt. No. 32). Because the liberty interest is implicated by the "public announcement of reasons for an employee's discharge," Morrison, 903 F.2d at 999, presumably, if the Defendants had, *sua sponte*, expunged the reasons for an employee's discharge from her file, the case would have merited dismissal for failure to state a claim. Thus, Golding's argument in her Addendum (Dkt. No. 56) that the "only way [she could] completely expunge the false charges against [her] that are now in [her] MCPS personnel file is to be on record as having been publicly vindicated in Court" rings empty and hollow. Golding was offered an opportunity to completely expunge the "false charges" from her file and replace them with a statement that she was ineligible for rehire. But Golding rejected the offer.

4

III. Analysis

In the circumstances of this case, however, it is difficult to determine precisely what the Plaintiff must show to be false in order to prevail. In Sciolino, the letter of termination specifically "accus[ed] him of deliberately destroying city property by advancing the odometer" of his police car. Sciolino, 480 F.3d at 645. Golding wishes to argue that the accuracy of the specific concerns highlighted in the termination letter are at issue here, just as the veracity of the destruction of property allegation was at issue in Sciolino. Accordingly, in Golding's numerous memorandums, her efforts are primarily designed to call into question the accuracy of the reports that gave rise to the administrators' concerns listed in the termination letter, i.e., the factual issue of whether or not she was disruptive during class time. But the termination letter clearly explained that the rationale for Golding's removal from the substitute list was that several administrators had complained about Golding's performance and, therefore, requested that she not be assigned to their school as a substitute. See Termination Letter, February 12, 2007 (Dkt. No. 32, Att. Pg. 00022) ("This administrative action is being taken given the number of school administrators that have requested you not be assigned to their schools as a substitute and the list reflects their dissatisfaction [with your performance].").

Golding was not a full time employee, instead she was required to provide services at various schools within the MCPS system according to the daily need of the school system. The fact that she was no longer welcome at several schools within the system, therefore, would significantly complicate MCPS's efforts to maintain her on a list of approved substitutes.[3] Thus, although the termination letter preserved in Golding's personnel file listed several vague

---

[3] The Court notes that the Handbook for Substitute Teachers in the MCPS system expressly explains that: "notification [that you have been designated 'do not use'] from one school will not preclude you from being called for substitute assignments at other locations. However, notification from several schools will prompt a review by the Director of Human Resources and may result in permanent removal of your name from the system." See Personnel File, Pg. 45 (Dkt. No. 32, Attach. #1).

5

concerns raised by other school administrators, the reason Golding was taken off the list was that she was no longer welcome at various schools within the MCPS system. In these circumstances, the falsity of the charges made in conjunction with Golding's termination depends not on whether the reports underlying the administrator's concerns were accurate, but rather on whether Pasier's explanation of the reason for her removal from the substitute aides list was fabricated or fictitious. The Court finds there to be no genuine issue of material fact on that question.

Accordingly, both Golding and Defendants needlessly delved into the veracity and accuracy of underlying complaints about Golding's performance. While Golding did not submit any affidavits in support of her motion for summary judgment, she instead attempted to create a genuine issue of material fact by responding to Defendant's affidavits. See, e.g., Pl. Mot. at 6 ("Regarding Sharon Hatfield's affidavit…I have a completely different recollection of the alleged events concerning my allegedly having been disruptive."). Defendants did submit several affidavits which address the veracity of the underlying complaints. See Fentress Aff. ("I observed [Golding] sporadically pacing and talking to herself about the police coming after her because of a credit card fraud claim."); Hatfield Aff. ("[Golding's] cell phone rang several times during class, and she opened a canned drink in class."); Fortune Aff. ("[Golding] did not follow the schedule, and her behavior was erratic.").

Both Golding and Defendants also addressed the issue of whether Pasier's explanation for the administrative decision to remove Golding's name from the substitute's list was a fabrication. Golding, without affidavits, claimed several times that the entire set of circumstances surrounding her removal was fabricated or concocted. See Pl. Mot. at 5 ("Furthermore, Your Honor, I submit that Pollard invented the unidentified witness in collusion with Stanley and Pasier to cover up some act of malfeasance."); See also Pl. Mot. at 6 ("It appears that [defendants' counsel] submits evidence when it suits him after this evidence

mysteriously just seems to appear without any explanation whatsoever."); Pl. Mot. at 9 ("With these completely invented lies in my file, and based on MCPS' outrageous and reckless behavior, this false information is highly likely to be publicized."). Defendants presented affidavits which spoke directly to whether complaints were, in fact, forwarded to Mark Pasier and other administrators about Christine Golding and whether she was, in fact, welcome back at these schools. See *Stanley Aff.* ("I submitted an exclusion form to the School Board's human resources, requesting that Christine Golding not return to Christiansburg High School."); *Hatfield Aff.* ("I sent an email on January 12, 2007 to the principal of Shawsville Elementary School, Chris Widrig, expressing my concerns."); *Fortune Aff.* ("In response to Christine Golding's behavior, I informed Oliver Lewis, the principal of Christiansburg Primary School, that I was uncomfortable having her in my classroom."); *Fentress Aff.* ("In response to Christine Golding's behavior, I requested that Oliver Lewis, the principal of Christiansburg Primary School, remove Christine Golding from the substitute list because she was not a good match for the children or the school.").

Although the Court believes the parties needed to focus only on whether Pasier's explanation of the reason for Golding's removal from the substitute aides list was fabricated, the record demonstrates that Defendants would succeed on their motion for summary judgment, and Golding would fail on her motion for summary judgment, regardless of the scope of the question. When a plaintiff seeks summary judgment, a plaintiff must do more than simply reiterate allegations contained in the complaint. Although the party seeking summary judgment need not support its motion with affidavits, it "always bears the initial responsibility of informing the district court of the basis for its motion...[and] demonstrat[ing] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Here, Golding has not met that initial responsibility, and correspondingly has not shown an "absence of a genuine issue of

7

material fact" as to any aspect of her complaint. Id. Instead, her memorandum in support of her motion for summary judgment baldly asserted that various administrator's concerns over her performance were fabricated, without any factual support. Other portions of her memorandum seem only to highlight potential issues of material fact. See Pl. Mot. at 6 ("Regarding Sharon Hatfield's affidavit...I have a completely different recollection of the alleged events concerning my allegedly having been disruptive."). The Court must conclude that Golding has not, in any way, complied with the requirements of Rule 56. Accordingly, her motion for summary judgment must be denied.

The Defendants' motion for summary judgment, on the other hand, must be granted. The defendants put forward several affidavits that addressed the key issue – whether Mark Pasier received complaints from administrators and requests that Christine Golding not return to their school. These affidavits make clear that various teachers and school administrators were displeased by Christine Golding's performance, and consequently requested that she not be allowed to return to their schools. In the face of these affidavits, Golding presents nothing more than speculation and conjecture that the MCPS system fabricated these complaints. But without any substantiation, Golding's argument is unavailing. "The non-moving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Golding's argument that the MCPS system has fabricated these reports relies purely on speculation or building one inference upon another.[4] It is, therefore, insufficient to defeat Defendants' motion.

Even were the Defendants obligated to demonstrate that there is no genuine issue of material fact as to the underlying complaints and performance problems, which the Court

---

[4] Golding seems to think that the allegation that she left a special education student in a bathroom, which was tactfully omitted from the termination letter, must have been fabricated because if she had left a student in the bathroom she would have violated some Virginia statutes, which the MCPS would have to report to the relevant authorities. This is the building of one inference upon another that is forbidden by the Fourth Circuit.

8

believes is more than required by the law, the affidavits presented by the Defendants would suffice. Several of these affidavits are first hand accounts of the performance issues later described in the termination letter. See, e.g., *Fentress Aff.* ("[Golding's] phone rang several times during class, and she answered several calls."); *Hatfield Aff.* ("Her cell phone rang several times during class..."). And Golding does not sufficiently rebut these allegations so to demonstrate a genuine issue of material fact for trial. Oftentimes Golding does not even dispute the allegations directly, and merely suggests that had she done what was alleged, another party should have stopped her. See Mot. to Exclude at 2 ("After...my cell phone allegedly 'rang throughout the day,' and that I allegedly answered it, Miss Fentress does not do anything to have me removed from the classroom."). Other times, Golding admits to the truth of some of these allegations. "I will stipulate that I forgot to turn my cell phone off and it rang twice before I could turn it off." Pl. Mot. at 7. As for her disagreement with other aspects of these affidavits, these disputes do not create a genuine issue of material fact for trial. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The standard for summary judgment is that "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. Golding has not demonstrated that such evidence exists, whereas Defendants have, by affidavit, supported their position thoroughly. Because "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," this Court must dispose of Golding's factually unsupported claims. Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006). Defendants' motion for summary judgment must, therefore, by granted.

IV. Alleged First Amendment Violations and Related State-Law Claims

Golding's First Amendment argument is entirely without merit. An employee's speech is not protected when the employee speaks "as an employee upon matters only of personal interest." Echtenkamp v. Loudoun County Pub. Schs., 263 F. Supp. 2d 1043, 1058 (E.D.Va. 2003). Golding wished to speak concerning the complaints that had been leveled against her by administrators at Christiansburg High School. This was an employee speaking on a matter of purely personal interest, not a protected matter of public concern.

Her related state law defamation claim is dismissed for lack of jurisdiction. See United Mineworkers of America v. Gibbs, 383 U.S. 715 (1966).

V. Conclusion

For the reasons noted above, the Plaintiff's motion for summary judgment is denied. For the same reasons the Defendants' motion for summary judgment must be granted.

The Clerk of Court is directed to strike this matter from the active docket and to send a copy of this Memorandum Opinion, as well as the accompanying Final Order, to Plaintiff and counsel of record for the Defendants.

ENTER: This  22nd  day of April, 2010

*James C. Turk*
Senior United States District Judge